IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID W. WILLIAMSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 11-627-SLR |
| | ) |
| CORRECT CARE SOLUTIONS LLC, et al., | ) |
| | ) |
| Defendants. | ) |

David W. Williamson, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Chad J. Toms and Daniel A. Griffith, Esquires, Whiteford, Taylor & Preston, L.L.C., Wilmington, Delaware, Counsel for Defendant Correct Care Solutions LLC.

Eileen M. Ford and Megan Trocki Mantzavinos, Esquires, Marks, O'Neill, O'Brien & Courtney, P.C., Wilmington, Delaware. Counsel for Correctional Medical Services, Inc., Linda Galef-Surdo, and Tracy Wilkins.

**MEMORANDUM OPINION**

Dated: September 10, 2012
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff David W. Williamson ("plaintiff"), a prisoner incarcerated at the James T. Vaughn Correctional Center, Smyrna, Delaware, filed his complaint pursuant to 42 U.S.C. § 1983. He proceeds pro se and has been granted leave to proceed without prepayment of fees. Presently before the court are defendants' motions to dismiss pursuant to Fed. R. Civ. P.12(b)(6). (D.I. 58, 60, 77) Also before the court are several motions filed by plaintiff including a motion to direct defense counsel to enter a formal appearance, motion to amend/correct a reply, motion to order service, request for counsel, and a motion to voluntarily dismiss. (D.I. 45, 52, 53, 82, 92) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will deny defendants' motions to dismiss (D.I. 58, 60, 77), will grant plaintiff's motion to voluntarily dismiss (D.I. 92), will grant plaintiff's request for counsel (D.I. 82), and will deny plaintiff's remaining pending motions (D.I. 45, 52, 53).

## II. BACKGROUND

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights by virtue of defendants' alleged deliberate indifference to serious medical needs. The court screened the amended complaint pursuant to 28 U.S.C. § 1915 and § 1915A, and allowed plaintiff to proceed on all claims against all defendants. On December 12, 2011, plaintiff voluntarily dismissed all claims against Dale Rodgers, M.D. ("Dr. Rodgers"). (See D.I. 30) In addition, on March 12, 2012, plaintiff filed the pending motion to voluntarily dismiss the claims in count two of the amended complaint as against CMS. (See D.I. 92)

Count one is raised against CMS and Tracy Wilkins ("Wilkins") and alleges denial of prescribed medications. Count two is raised against Linda Galef-Surdo, M.D.[1] ("Dr. Galef-Surdo"), and Wilkins and alleges denial of a recommended medical device (i.e., knee brace). Count three is raised against Correct Care Solutions LLC ("CCS") and Dr. Galef-Surdo and alleges denial of a prescribed special knee brace, denial of medical care, and/or denial and attempt to prevent recommended reconstructive surgery. Count four is raised against CCS and alleges denial of recommended post-operative medical care including physical therapy and a knee brace. All defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6).[2] In addition, plaintiff has filed several other motions as discussed below.

## III. MISCELLANEOUS MOTIONS

### A. Motion for Formal Entry of Appearance; Motion to Amend/Correct Reply; Motion to Order Service

Plaintiff moves to direct Daniel A. Griffith to file a formal appearance on the record. (D.I. 45) Along with attorney Chad J. Toms, attorney Griffith appears as attorney of record for CMS. The motion is frivolous and will be denied. (D.I. 45)

Plaintiff moves to amend his reply to defendant's opposition to plaintiff's motion for injunctive relief. (D.I. 52) The court denied the motion for injunctive relief on

---

[1] Improperly named by plaintiff as Surdo-Galef.

[2] Defendants move for dismissal despite this court's determination following initial screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1) that allowed plaintiff to proceed with his claims. The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)).

January 25, 2012. (*See* D.I. 70) Therefore, the court will deny as moot the motion to amend the reply. (D.I. 52)

Plaintiff moves the court for an order to personally serve defendants who chose not to waive service and an extension of time to execute service. (D.I. 53) CCS, Dr. Galef-Surdo, and Wilkins filed waivers of service and CMS stipulated to service of process. (*See* D.I. 19, 23, 24, 69) Therefore, the court will deny the motion as moot. (D.I. 53)

### B. Motion to Voluntarily Dismiss

Plaintiff seeks leave of court to dismiss one of the two claims raised against CMS. (D.I. 92) More particularly, plaintiff seeks to dismiss the claims raised against CMS in count two of the amended complaint. The court construes the filing as a motion to voluntarily dismiss pursuant to Fed. R. Civ. P. 41. The court will grant the motion. The only claim remaining against CMS is that found in count one of the amended complaint.

## IV. MOTIONS TO DISMISS

### A. Standard of Review

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a))

3

(internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiffs obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.' The purpose of this rule is to avoid the situation where a plaintiff with a legally deficient claim that is based on a particular document can avoid dismissal of that claim by failing to attach the relied upon document. Further, considering such a document is not unfair to a plaintiff because, by relying on the document, the plaintiff is on notice that the document will be considered."[3] *Lum v. Bank of Am.*, 361 F.3d 217 n.3

---

[3]The court reviewed the documents submitted by defendants with their motions to dismiss that plaintiff referred to in the amended complaint.

(3d Cir. 2004) (internal citations omitted); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## B. Plaintiff's Claims

Plaintiff raises medical needs issues. He suffers from hypothyroidism and alleges that he was not provided the appropriate medication for a fourteen-day period despite repeated requests. In addition, he has had recurrent anterior cruciate ligament ("ACL") injuries and corrective surgeries with cadaver grafts. The first reconstructive surgery occurred in March 2007. The 2007 graft failed and, on June 2010, plaintiff fell and injured his right knee. Plaintiff underwent reconstructive surgery a second time on January 5, 2011. A third reconstructive surgery took place on December 7, 2011, after plaintiff initiated this lawsuit.

### 1. Count one against CMS and Wilkins for delay/denial in the administration of medication

Plaintiff's hypothyroidism is treated with daily hormone replacement medication. Denials and/or delays in treatment of the condition aggravate plaintiff's symptoms, and CMS' medical staff were advised and aware of this. Plaintiff alleges that he was denied his prescribed treatments for fourteen days from October 30, 2009 to November 13, 2009. Plaintiff submitted medical grievances complaining of the delay and/or denial of medication on November 4, 2009 (#190661), December 11, 2009 (#192470), and June 21, 2010 (#204330).[4] As a result of the lack of medication, plaintiff suffered massive

---

[4]Plaintiff's grievance #190661 was upheld noting that plaintiff did not receive his medication for November in a timely manner. Grievance #192470 determined that plaintiff received his December medications, but noted that the DOC and CMS were aware of gaps in dispensing medication between renewals, and that the medication should be reordered before the supply runs out. A chart review suggested that the

5

swelling around his mouth, chin, and jaw area, and was sent to the infirmary on November 13, 2009 for emergency medical attention, where he was treated. (D.I. 8, ¶¶ 18, 25, 28, 30, 32, 33, 35, 40, 41, 46)

In each instance the grievances were sent to Wilkins for the initial investigation and she was charged with making the determination of whether plaintiff's medical condition and requests fell within the gambit of an emergency that required immediate medical attention. Wilkins rejected the requests for medical care and/or treated them as non-emergencies. Plaintiff alleges Wilkins' actions resulted in the November 13, 2010 medical condition. In addition, plaintiff submitted eight requests for treatment, all were ignored, and CMS refused to adhere to, or employ, corrective actions upheld by DOC officials. According to plaintiff, CMS possessed available "stock supplies" of appropriate medication but refused to provide them to plaintiff. (*Id.* at ¶¶ 50, 53, 57, 58, 59, 61, 77)

### 2. Count two against Dr. Galef-Surdo and Wilkins for denial of knee brace while CMS was the contract medical service provider

Plaintiff underwent ACL reconstructive surgery and a cadaver graft in March 2007, and post-operative care included a DonJoy ACL knee brace. Plaintiff fell on June 5, 2010 and reinjured the ACL of the right knee.[5] He was seen by medical and, on June 8, 2010, medical issued orders for a specialty brace with hinges ("knee brace"). CMS medical staff personnel reported that the knee brace had to be specially ordered from CMS Regional and that Regional would have to authorize the purchase. In the interim,

---

current renewal reminder process in the pharmacy was not functioning well. Grievance #204330 also noted delays in medication renewal. (D.I. 62)

[5]Plaintiff was diagnosed with a deficient ACL on August 5, 2010 and November 8, 2010. (D.I. 8, ¶¶ 86, 87)

plaintiff was provided a light-weight neoprene knee wrap. Medical personnel indicated that the neoprene knee wrap was not designed, nor the proper type, for plaintiff's knee condition. (D.I. 8, ¶¶ 94, 98, 118, 120-21, 124)

On June 22, 2010, Dr. Galef-Surdo indicated that the knee brace was on order. When plaintiff asked Dr. Galef-Surdo about the knee brace, she advised him that the knee brace was too expensive and that plaintiff had to realize that he is in prison, and not in the community. Dr. Galef-Surdo would not verify whether CMS Regional had approved the knee brace or required more authorization and refused to follow-up or seek authorization from prison officials for medical to provide the knee brace. Plaintiff fell again on June 30, 2010, was taken to infirmary, and examined by Dr. Galef-Surdo. Plaintiff alleges that the neoprene knee wrap failed to protect his knee from dislocation and/or its acute instability. He further alleges that Dr. Galef-Surdo enforced the cost containment policy of CMS when she refused to follow-up on the prescribed knee brace. CMS' contract as the medical services provider for the DOC ended on June 30, 2010, and it did not provide the knee brace prior to that date. (*Id.* at ¶¶ 127, 146, 150-51, 169-177, 179)

Plaintiff submitted medical grievance #204550 on June 22, 2010, reporting Dr. Galef-Surdo's acts with regard to his knee condition and the need for the knee brace. Wilkins was named the initial investigator to determine whether the knee brace issue was an emergency. Wilkins made the determination that it was not an emergency grievance, and the grievance was denied. The decision notes that a knee support brace with hinges was ordered on June 8, 2010, but it was unclear from the file if it was

received. The grievance decision further notes, "if not received, provider should ensure grievant receives same." (*Id.* at ¶¶ 158-60, 162-63, 165-66; D.I. 62)

### 3. Count three against CCS and Dr. Galef-Surdo for denial/delay of knee brace, medical care, and reconstructive surgery

CCS became the DOC contract medical service provider on July 1, 2010, and it continued the employment of Dr. Galef-Surdo. Dr. Galef-Surdo indicated to plaintiff on July 2, 2010 that the knee brace was on order, but she refused to follow-up. On July 6, 2010, plaintiff was advised that CCS had placed another order for a knee brace. Dr. Galef-Surdo advised plaintiff on September 8, 2010 that the brace was ordered and she did not know why it had not been issued. (D.I. 8, ¶ 208)

On November 8, 2010, orthopedic surgeon Dr. DuShuttle confirmed that plaintiff had an ACL injury to the right knee and recommended ACL reconstructive surgery with a cadaver graft. Plaintiff was issued a knee sleeve to replace the patella wrap. A patella stabilizer was issued on December 17, 2010. Plaintiff reported to medical that the patella stabilizer was identical to the previous wrap that had failed and was told that another neoprene wrap would be issued because the DOC prohibited the knee brace due to metal content. On December 21, 2010, Dr. Rodgers stated that plaintiff was approved for a "good brace" and that he would be fitted for an ACL brace. Plaintiff had also made requests to medical personnel on August 5 and November 18, 2010. (*Id.* at ¶¶ 208, 213, 215, 228, 233, 234, 237)

Plaintiff submitted medical grievance #216310 for the denial of the knee brace and the denial of the reconstructive ACL surgery. On December 21, 2010, Dr. Rodgers advised plaintiff that CCS had denied Dr. DuShuttle's recommendation for reconstructive

8

surgery and would only authorize an arthroscopy for further evaluation. Dr. Rodgers indicated that the ACL reconstrutive surgery was an elective procedure and it was CCS' policy to deny elective procedures, that plaintiff was a prisoner in a prison setting and not in a community, that the new providers were not going to provide reconstrutive surgery or a new knee, that plaintiff did not have collateral knee damage or deterioration, that outside surgeons almost always recommend surgery because they are paid for their services, and they would likely get a second opinion. Dr. Rodgers indicated that the arthroscopy was all she could obtain approval for and, after that, would see if a good brace could be obtained. Dr. Rodgers submitted a consult to fit plaintiff with a speciality brace, but the fitting did not occur because a second medical opinion was not sought. Plaintiff alleges that CCS and Dr. Galef-Surdo engaged in unnecessary evaluations despite Dr. DuShuttle's recommendation of reconstrutive surgery. (Id. at ¶¶ 259-61, 264-66, 268, 270, 277-78, 283-84, 286, 289, 301)

      On January 5, 2011, plaintiff arrived at the hospital for the arthroscopic evaluation, the only authorization by CCS, but Dr. DuShuttle reported that there were no documented reasons not to proceed with the recommended ACL reconstructive surgery, and it took place on the same date. On January 19, 2011, Dr. DuShuttle ordered or recommended a DonJoy ACL brace following the ACL reconstructive surgery. On January 21, 2011, Dr. Rodgers either claimed that prison officials had denied the ACL brace or admitted that she did not seek prison authorization for the knee brace. In response to emergency medical grievance #216310, prison officials indicated that plaintiff had been approved for the knee brace on February 8, 2011. (Id. at ¶¶ 208, 239, 302, 305, 308, 315)

9

Plaintiff alleges that CCS denied or delayed recommended care (i.e., speciality knee brace with hinges and DonJoy ACL brace) for non-medical reasons from July 1, 2010 through December 2010, and from January through June 20, 2011. Under CCS, the knee brace was allegedly ordered on July 6, December 21, 2010 and January 21, 2011, but had not been provided to plaintiff as of June 20, 2011. Nor had plaintiff been fitted for the knee brace as of June 22, 2011. Plaintiff further alleges that CCS and Dr. Galef-Surdo engaged in a pattern to obstruct, delay, and deny corrective ACL surgery despite a specialist's recommendation for the surgery. (*Id.* at ¶¶ 208, 224, 258, 295)

#### 4. Count four against CCS for denial of post-operative physical therapy and knee brace

During the post-operative examination on January 19, 2011, Dr. DuShuttle provided orders for post-operative care and recommended plaintiff attend physical therapy and wear a DonJoy ACL knee brace at least six to eight months following surgery. On January 21, 2011 medical staff stated that it was too expensive to send people to an outside facility for physical therapy. Plaintiff was told on at least two occasions that CCS did not have the facilities to provide the intensive strength training rehabilitation that the ACL protocol required. Plaintiff was told that, "they never want to send people off premises. It's the cost, you see." He was also told that it may be logistically impossible due to security. While he was seen by the in-house physical therapist for scheduled physical therapy, plaintiff alleges that he did not actually receive any physical therapy. Plaintiff submitted several emergency medical grievances for physical therapy, but they were denied by CCS on the basis that it reserved the

10

prerogative to follow or ignore medical consult/suggestions. (D.I. 8, ¶¶ 319-22, 325, 330, 333-36-37, 340-41, 347, 351-53, 358, 366)

On February 29, 2011, Dr. DuShuttle instructed plaintiff not to wear the neoprene knee sleeve because it was incorrect and impairing the healing process. On March 6, 2011, plaintiff's right knee momentarily dislocated, swelled, and plaintiff was unable to bend the knee. Correctional staff sought to send plaintiff to the infirmary, but CCS medical staff denied the request because it was a Sunday and there was no physician available. Plaintiff submitted medical grievances for treatment and reported the ongoing denial of a knee brace, medical care and post-operative care as recommended by Dr. DuShuttle. CCS denied the medical request again based upon the policy that CCS reserved the prerogative to follow or ignore "medical consult/suggestions." (Id. at ¶¶ 371-74, 376-78, 381-83, 407)

Medical personnel reported that prison officials had authorized the DonJoy ACL brace, but that CCS did not have a supplier and the delay was in Regional. As of March 17, 2011, medical staff was waiting on corporate to cut a check to provide the funds, but on June 29, 2011, CCS corporate had yet to pay the supplier for the brace. When plaintiff presented to Dr. DuShuttle on March 31, 2011, he noted "instability, ambulation with pain, positive drawer test, positive Lachman test" and indicated that plaintiff may need another surgery." (Id. at ¶¶ 393, 395-96, 398, 387)

Plaintiff received a second opinion on May 6, 2011, that concurred with Dr. DuShuttle's opinion that plaintiff had a torn ACL and the posterior cruciate ligament showed damage that required corrective surgery. Plaintiff submitted requests in mid-May 2011, and on June 5, 2011 for CCS to provide the recommended treatment, but

both requests were denied.[6]  As of July 5, 2011, CCS had not provided the DonJoy ACL brace.  (*Id.* at ¶¶ 335, 436-440, 444, 445)

CCS moves for dismissal on the grounds that:  (1) plaintiff has failed to allege that he suffers from a serious medical need; (2) CCS cannot be held liable on the basis of respondeat superior; and (3) plaintiff failed to identify a specific policy or custom that is likely to result in violation of his constitutional rights.  (D.I. 59)  Dr. Galef-Surdo and Wilkins move for dismissal on the ground that the alleged conduct of Dr. Galef-Surdo and Wilkins does not rise to the level of deliberate indifference to a serious medical need.  (D.I. 61)  CMS moves for dismissal on the grounds that:  (1) the allegations are insufficient to state a claim for deliberate indifference; and (2) plaintiff failed to identify a specific policy or custom that is likely to result in violation of his constitutional rights.  (D.I. 78)  All defendants move for dismissal on the basis that the amended complaint is inadequate under Fed. R. Civ. P. 8.

## C. Discussion

Defendants argue that, rather than stating an actionable claim for deliberate indifference to a medical need, plaintiff alleges his medical providers failed to provide his desired level of medical care.  They further argue that plaintiff has not established a serious medical need and that, at no time, was plaintiff denied medically necessary treatment.

---

[6]On December 7, 2011, Dr. DuShuttle performed the reconstructive surgical procedure.  (D.I. 56)  CCS contends that, as a result of the surgery, plaintiff's claims of deliberate indifference are generally undercut and effectively mooted.  (D.I. 69 at 1)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (not published) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). "[M]ere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

When a plaintiff relies upon a theory of respondeat superior to hold corporations such as CMS and CCS liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v.*

13

*Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that CMS and/or CCS are directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

Assuming the acts of employees of a corporate medical provider have violated a person's constitutional rights, those acts may be deemed the result of a policy or custom of the entity for whom the employee works, thereby rendering the entity liable under § 1983, where the inadequacy of existing practice is so likely to result in the violation of constitutional rights that the policymaker can reasonably be said to have been deliberately indifferent to the need. *See Natale*, 318 F.3d at 584 (citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish . . . policy with respect to the action issues an official proclamation, policy or edict.'" *Miller v. Correctional Med. Sys., Inc.*, 802 F. Supp. 1126, 1132 (D. Del. 1992) (alteration in original) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Id.* (citing *Andrews*, 895 F.2d at 1480; *Fletcher v. O'Donnell*, 867 F.2d 791, 793-94 (3d Cir. 1989)).

The court first notes that the allegations in the amended complaint refer to obvious serious medical conditions: hypothyroidism requiring daily medication and recurrent ACL injuries requiring reconstructive surgeries. The allegations against CMS refer to a fourteen day lapse in failing to provide medication. CMS argues that the brief gap in the unavailability of medication does not rise to the level of deliberate indifference and that the medical records support its position. In addition, CMS argues that the amended complaint fails to allege an existing policy or custom like to result in the violation of plaintiff's constitutional rights.

To the contrary, the medical records indicate that plaintiff was without needed medication for approximately fourteen days, the lack of medication resulted in necessary medical attention, and CMS, as well as the DOC, was aware of the problem in dispensing medications. Liberally construing the amended complaint, as the court must, plaintiff has alleged that CMS had cost containment policies, customs, or practices of delay in ordering and dispensing needed medication.

CCS contends that plaintiff simply alleges that his medical providers failed to provide him with the desired level of medical care, including a specific type of knee brace, that he was provided a substitute knee brace on two occasions, and that at no time was plaintiff denied treatment deemed medically necessary. It further argues that plaintiff's general averments do not specify a particular policy or custom sufficient to invoke liability under § 1983.

Plaintiff alleges medical personnel provided substituted knee braces with the knowledge that they were not adequate. As of the date the complaint was filed, plaintiff had yet to receive the recommended knee brace, plaintiff did not receive appropriate

physical therapy, and CCS delayed reconstructive surgery. Again, liberally construing the amended complaint, as the court must, plaintiff has adequately alleged that CCS policies, customs, or practices through its continual delay in providing an appropriate knee brace, failing to provide appropriate physical therapy as ordered by treating physicians, and adopting a policy to deny "elective" procedures.

With regard to the individual defendants, plaintiff alleges that Wilkins violated his constitutional rights when she did not determine that the lack of medication for a fourteen day period was an emergency and did not approve his emergency grievances for a knee brace. Plaintiff alleges that Dr. Galef-Surdo refused to follow-up on an order for plaintiff's specialty knee brace and instead provided a neoprene knee sleeve.

Wilkins argues that the amended complaint fails to allege her deliberate indifference because the actions arose from her role as an investigator in the grievance process. Plaintiff does not allege that the grievance procedure was inadequate. Rather, he alleges that Wilkins was aware of his medical conditions, yet failed to take the required action to see that medical care was provided.

Dr. Galef-Surdo contends that plaintiff merely disagrees with the medical care he received and that plaintiff's receipt of extensive medical care overcomes the claim of deliberate indifference for failing to provide him with the special knee brace and recommended reconstructive knee surgery. To the contrary, plaintiff alleges that Dr. Galef-Surdo would not follow-up on the knee brace, told plaintiff that he was incarcerated and the knee brace was too expensive, and that she enforced a corporate cost containment policy in denying or delaying treatment to plaintiff.

Liberally construing plaintiff's allegations, as the court must, it concludes that plaintiff has adequately alleged § 1983 claims against all defendants sufficient to survive a motion to dismiss.

## V. REQUEST FOR COUNSEL

Plaintiff requests counsel on the grounds that his case has merit, he unsuccessfully sought counsel, the claims are complex, and he is unable to conduct meaningful discovery and prepare or present his case. (D.I. 82) Plaintiff appears pro so and is unable to afford legal representation. The court determines that it is appropriate to encourage legal representation for plaintiff by an attorney in this case. Therefore, the court will grant the request for counsel.

## VI. CONCLUSION

For the reasons discussed above, the court will deny defendants' motions to dismiss, will grant plaintiff's motion to voluntarily dismiss, will grant plaintiff's request for counsel, and will deny plaintiff's remaining pending motions.[7] (D.I. 45, 52, 53, 58, 60, 77, 82, 92)

An appropriate order will be entered.

---

[7]The court does not consider defendants' ground for dismissal pursuant to Fed. R. Civ. P. 8 inasmuch as defendants had no problem identifying claims raised against them and plaintiff further identified them in his oppositions to the motions to dismiss.

17